IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | Case No. 08-10111-01-JTM |
| APOLLO ENERGIES, INC., | |
| Defendant. | |
| UNITED STATES OF AMERICA,, | |
| Plaintiff, | |
| vs. | Case No. 08-10112-01-JTM |
| DALE WALKER, | |
| Defendant. | |

MEMORANDUM AND ORDER

The defendants in the present actions, Apollo Energies, Inc., and Dale Walker appeal their

misdemeanor convictions under the Migratory Bird Treaty Act (MBTA), 17 U.S.C. § 701, *et seq.*

Both defendants were convicted following a trial before the United States Magistrate Judge. The sole

question presented in the appeal is whether the Magistrate Judge erred in holding that a conviction under 16 U.S.C. § 703 does not require any scienter element, but is rather a specific intent crime.[1]

The court previously set forth the standards for appeals from a conviction before a Magistrate Judge in its Order setting forth the briefing schedule for the parties:

> Pursuant to Fed.R.Crim.P. 58(g)(2), "[t]he defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Under Rule 58(g)(2), the district court reviews de novo only those decisions of the Magistrate Judge that are purely legal in nature, *United States v. Robinson*, No. 06-M-167-B, 2007 WL 218708, *2 (D. Wyo. Jan. 26, 2007). "The credibility of the witnesses and the weight given to the evidence, as well as the inferences and conclusions drawn therefrom, are matters for the Magistrate Judge." Id. *See also United States v. Friend, No. M*C-108-00015-JRH, 2008 WL 4179440, *1 (S.D. Ga. Sept. 10, 2008) (stating standards for Rule 58(g)(2) appeals); *United States v. Jones*, No. DKC-2007-0278, 2008 WL 3285906, *2 (D. Md. Aug. 7, 2008) (same).

(Dkt. No. 28, at 1).

**Facts**

There is no substantial dispute as to the factual findings of the Magistrate Judge. The present case began in November of 2005, when a landowner telephoned the United States Fish and Wildlife Service to report the discovery of dead birds in a heater-treater owned by Apollo Energies. A heater-treater is a device used in the oil and gas industry to process crude oil. The device does not always employ active combustion, but crude oil will flow through the chamber on the way to storage tanks. Heater-treaters have an exhaust stack with a diameter of approximately 9 inches.

---

[1] At oral argument, counsel also suggested that defendants were further challenging the Magistrate Judge's denial (Case No. 08-10111, Dkt. 14; at 5-7; Case No. 08-10112, Dkt. 15, at 5-7) of their motions for suppression. (Case No. 08-10111, Dkt. 5; Case No. 08-10112, Dkt. 6). However, neither appeal brief (Dkt. No. 29 in both cases) submitted by the defendants mentions suppression, and the court deems the argument waived.

Special Agent John Brooks of the Fish and Wildlife Service met the landowner the next day to investigate the heater-treater, but no dead birds were found in the unit. Brooks asked the landowner if there were other heater-treaters in the area, and was told there were two or three. Investigating these, Brooks found birds in each of them.

Brooks then spoke with Jim Byers, the owner of Apollo Energies, and one of its employees, Gary Osenbaugh. Byers told Brooks that he had been told there were a large number of dead birds in the Lake Side Number 2 heater-treater, and had directed Osenbaugh to clean them out.

In the next few days, Brooks inspected ten other heater-treaters in the area, and found dead birds in about half. Further searches in other heater-treaters ultimately produced the remains of some 300 birds, ten of which were determined to be birds protected by the MBTA. The Fish and Wildlife Service then began an education campaign directed at the oil and gas industry about the dangers posed by heater-treaters to migratory birds, giving members of the industry until January 1, 2007 to implement corrective action.

In April of 2007, the Fish and Wildlife Service inspected some 113 heater-treaters. The Service also obtained a search warrant for a search of the heater-treater on the defendant Apollo's "Herndon" lease. Brooks notified Byers of the search of that heater-treater, and both were present at the scene. Inside the heater-treater, Brooks found two dead birds, one of which was determined to be a Northern Flicker, which is protected under the MBTA. Byers told Brooks that "it should have been handled, we have only ourselves to blame." (Tr. at 156).

At approximately the same time, Brooks also obtained a search warrant for the search of a heater-treater owned by defendant Dale Walker on what is known as the Red Cedar Warren lease. Brooks found three dead birds in the heater-treater, birds protected under the MBTA (two Northern

Flickers and one Eastern Bluebird). In April of 2008, Brooks searched another of Walker's heater treaters on what is known as the Red Walker Warren lease, and found a dead Grackle, also protected by the MBTA.

In Case No. 08-10111-JTM, the defendant Apollo Energies was charged with one count of violating the MBTA, 16 U.S.C. § 703. He was convicted, (Dkt. No. 14), and fined $1500. (Dkt. No. 18).

In Case No.08-101112-JTM, defendant Walker was charged with two counts of violating 16 U.S.C. § 703 in case No. 08-10112, and convicted on both counts. (Dkt. No. 16). He was fined $250 on each count. (Dkt. No. 19).

**Conclusions of Law**

The present case turns on the proper interpretation of 16 U.S.C. § 703, which establishes that it is a crime

> at any time, by any means or in any manner to pursue, hunt, take, capture, kill, attempt to take, capture, or kill, possess, offer for sale, sell, offer to barter, barter, offer to purchase, purchase, deliver for shipment, ship, export, import, cause to be shipped, exported, or imported, deliver for transportation, transport or cause to be transported, carry or cause to be carried, or receive for shipment, transportation, carriage, or export any migratory bird ... included in the terms of the conventions between the United States and Great Britain for the protection of migratory birds....

In *United States v. Corrow*, 119 F.3d 796 (10th Cir. 1997), the Tenth Circuit upheld the conviction the defendant, who was found to be in possession of bald eagle feathers, under the MBTA. The court wrote:

> Since its enactment, the majority of courts considering misdemeanor violations under § 703 of the MBTA have treated these offenses as strict liability crimes, eliminating proof of scienter from the government's case. *United States v. Boynton*, 63 F.3d 337, 343 (4th Cir.1995). Although we have not previously so held, we now join those

4

Circuits which hold misdemeanor violations under § 703 are strict liability crimes. *See United States v. Smith*, 29 F.3d 270, 273 (7th Cir.1994); *United States v. Engler*, 806 F.2d 425, 431 (3d Cir.1986), *cert. denied*, 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987); *United States v. Chandler*, 753 F.2d 360, 363 (4th Cir.1985); *United States v. Catlett*, 747 F.2d 1102, 1105 (6th Cir.1984); *United States v. Wood*, 437 F.2d 91 (9th Cir.1971); *Rogers v. United States*, 367 F.2d 998, 1001 (8th Cir.1966), *cert. denied*, 386 U.S. 943, 87 S.Ct. 976, 17 L.Ed.2d 874 (1967); *contra*, *United States v. Delahoussaye*, 573 F.2d 910, 913 (5th Cir.1978). Simply stated, then, "it is not necessary to prove that a defendant violated the Migratory Bird Treaty Act with specific intent or guilty knowledge." *United States v. Manning*, 787 F.2d 431, 435 n. 4 (8th Cir.1986).

119 F.3d at 805. The court also rejected the defendant's argument that, in the absence of any scienter requirement, a conviction under the MBTA was unconstitutionally vague:

Mr. Corrow invites us to read a scienter requirement into the MBTA to satisfy the due process concerns implicit in all criminal statutes. However, the plain language of § 703 renders simple possession of protected feathers unlawful ("it shall be unlawful"). Like other regulatory acts where the penalties are small and there is "no grave harm to an offender's reputation," *Engler*, 806 F.2d at 432, conduct alone is sufficient.

*Id.*

The defendants present three arguments.  First, they contend that *Corrow* is limited by its context. That case, they contend, involved possession of protected bird parts, and thus inherently involved some threshold awareness by the defendant of engaging in activity affecting birds.  In this vein, the defendants also stress that most of the authorities cited in *Corrow* also involve similar cases of possession or hunting or some other act banned by the statute which necessarily implies some mental awareness on the part of a defendant.

Second, and more generally, the defendants stress the type of bird-hitting-the-living-room-window concern that some courts have expressed as a basis for implying some limitation on the otherwise open-ended "take, capture, [or] kill" language of the statute.  That is, such courts reason, in the absence of such limitations a homeowner might be liable if a bird killed itself by accidentally

flying into a window of the residence. *Mahler v. United States Forest Serv.*, 927 F.Supp. 1559 (S.D. Ind. 1996); *Citizens Interested in Bull Run, Inc. v. Edrington*, 781 F.Supp. 1502 (D. Or. 1991); *Washington Audubon Soc'y v. Robertson*, No. C89-160WD, 1991 WL 180099 (W.D. Wash. Mar. 7, 1991); *United States v. Rollins*, 706 F.Supp. 742, 744 (D. Idaho 1989).

Finally, the defendants also present a due process argument that applying criminal liability without proof of scienter is impermissibly vague.  They note that in *Corrow*, where the court rejected such an argument, it did so in part because "the penalties are small" in such cases. The maximum fine for misdemeanor violations under the MBTA, the defendants note, has subsequently increased from a $500 fine to the current $15,000.

The court finds that the present appeals should be denied.  As the defendants acknowledge, there is also a substantial body of case law squarely holding that the MBTA has no scienter requirement. *See United States v. Morgan*, 311 F.3d 611,(5th Cir. 2002); *United States v. F.M.C. Corp.*, 572 F.2d 902, 906 (2nd Cir. 1978); *United States v. Moon Lake Elec. Ass'n*, 45 F.Supp.2d 1070, 1075 (D. Colo. 1999); *United States v. Corbin Farm Serv.*, 444 F.Supp. 510, 536 (E.D. Cal. 1978). Indeed, "courts consistently hold that the MBTA applies to both intentional and unintentional behavior." *Center for Biological Diversity v. Pirie*, 191 F.Supp.2d 161, 175 (D.D.C.,2002), *vacated on other gds.*, No. 02-5163 2003 WL 179848 (D.C.Cir. Jan 23, 2003).

While *Corrow* is a "possession" case rather than a "take, capture, [or] kill" case, there is nothing in the broad language of the opinion which would suggest that the Tenth Circuit would require a different result in a case such as the present.  Indeed, if any cases ought to be narrowly construed, it should be those cited by defendants which have adopted some form of scienter requirement. Thus, in *Rollins,* the only court applying a due process limitation on MBTA

prosecutions, the court refused to find guilty the defendant, a farmer who had accidentally killed migrating geese who had been killed by eating crops sprayed with pesticide on his land. In that case, farmer had used pesticides on his fields previously with no apparent injury to migrating birds. Moreover, there was no "effective way" to exclude migratory birds from the fields after pesticide had been applied. 706 F.Supp. at 743. Here, the defendants had notice of the dangers posed by heater-treaters, and could have easily avoided the dangers simply by placing a grill over the exhaust stack and other entrances to the heater-treaters.

As to the defendants' argument regarding the bird flying into the glass window, the court finds that such a concern would be better dealt with by imposing a requirement of proximate causation in such a *hypothetical* case. But the important point is that hypothetical is not this case. That is, the Fish and Wildlife Service specifically undertook an educational campaign directed at the oil and gas industry and specifically with respect to heater-treaters. Letters sent by the Service specifically warned of potential criminal liability. The defendant Apollo Energies has acknowledged receiving that warning information. The Magistrate Judge made a specific finding of fact that it was common knowledge in the oil & gas industry that heater-treaters were killing birds.

While the fine has increased for misdemeanor MTBA violations, it remains relatively small. Further, it should be noted that Congress has added a felony level offense to MBTA violations, which does explicitly include a scienter requirement. 16 U.S.C. § 707(a). In adding such a requirement, the Congress stated: "Nothing in this amendment is intended to alter the 'strict liability' standard for misdemeanor prosecutions under 16 U.S.C. § 707(a), a standard which has been upheld in many Federal court decisions." S.Rep. No. 99-445, at 16 (1986). *See United States v. Morgan*, 311 F.3d 611, 615 (5th Cir. 2002).

7

Finally, it may be noted that this result is consistent with the basic standard, acknowledged in *Corrow*, the MBTA is a regulatory act, and regulatory acts presumptively are considered strict liability crimes.

The court finds unpersuasive the defendants' further suggestion that the Tenth Circuit has subsequently expressed a desire to limit the application of *Corrow,* or to somehow express support for a narrower view of liability under the MBTA by criticizing one of the cases – *United States v. Moon Lake Elec*., 45 F.Supp.2d at 1070) – adopting a strict liability view. *See United States v. Friday*, 525 F.3d 938 (10th Cir. 2008).

In *Friday*, the court was not dealing directly with MBTA. Instead, the defendant was charged with shooting a bald eagle without a permit and therefore violating the Bald and Golden Eagle Protection Act. The defendant, a member of the Northern Arapaho Tribe of Wyoming, defended on the grounds that the prosecution was barred by the Religious Freedom Restoration Act (RFRA).  The Tenth Circuit reversed the district court's dismissal of the indictment, holding that the prosecution was permissible under RFRA.  In its discussion of the compelling nature of the government's interest in protecting bald eagles, the court wrote:

> The government has responded to this problem [of eagles killed by electric wires] with an aggressive interpretation of the Eagle Act, treating the unintentional killing of eagles as a strict liability criminal offense. In the one recorded case on the subject, a Colorado district court agreed with the government, and refused to dismiss criminal charges under the Eagle Act and the Migratory Bird Treaty Act against a rural electric company whose wires had killed 38 eagles, *without proof of intent or even of negligence*. *United States v. Moon Lake Elec. Ass'n, Inc*., 45 F.Supp.2d 1070 (D.Colo.1999); *see* Larry Martin Corcoran & Elinor Colbourn, *Shocked, Crushed and Poisoned: Criminal Enforcement in Non-Hunting Cases Under the Migratory Bird Treaties*, 77 Denv. U.L.Rev. 359, 391-92 (1999) (article by Justice Department lawyers discussing the *Moon Lake* prosecution).

*Friday*, 525 F.3d at 958-59 (emphasis added).

The defendants cite the "without proof of intent or even of negligence" language from the passage quoted above, and advance the suggestion that the Tenth Circuit was thereby expressing shock and outrage at the concept of prosecution without proof of intent.  However, this reads something into the *Friday* opinion which simply isn't there.  That is, the emphasis defendants seek to add to that opinion is very much *not* in the original.

As noted earlier, the court in *Friday* was simply discussing the relative strength of the government's interest in protecting bald eagles, and so it gave a general history of such efforts.  The court concluded:

> Using the threat of prosecution under the *Moon Lake* theory as a stick, the government encourages companies to enter voluntary "avian protection plans" in exchange for the exercise of prosecutorial discretion. These plans can require companies to install guards or reposition wires and also require reporting of eagles that are nonetheless electrocuted. The government tells us that this approach is the most effective means of protecting the eagle population from electrocution: the threat of possible prosecution exacts voluntary efforts to preserve the eagle, but more criminal prosecutions for unintentional killings would both jeopardize the voluntary agreements and give companies an incentive to hide, rather than to report, eagle deaths. We have no basis for doubting this assessment, and in light of the executive's vested and exclusive authority over criminal prosecution, we must defer.

> The government's response to the problem of electrocution thus confirms rather than refutes the strength of the government's interest in the eagle. Indeed, with respect to both religious and secular threats to the eagle, the government appears to take a similar approach: it requires persons with legitimate interests in conflict with eagle protection to conduct their activities in such a way as to minimize the impact. By using the threat of criminal prosecution it forces them to comply with limitations and subjects their compliance to scrutiny – whether under the statutory permit process in the case of religious uses, or avian protection plans in the case of electric companies.

*Id.* at 959 (citations omitted). In this passage, the court simply recognizes that the government has used *Moon Lake* as leverage to force power companies to take voluntary actions to minimize eagle deaths. Nowhere here is there any suggestion that the government's approach was founded on an

erroneous interpretation of the law.  The court ultimately agrees that such an approach is within the government's discretion, and helps exemplify the strong governmental interest in eagle protection.

The court finds that *Corrow* is controlling; nothing in the present action would support circumscribing its application here. The court further adopts the conclusions adopted in the well-reasoned opinion of the Magistrate Judge, and orders that the Judgments in the present actions be accordingly AFFIRMED.

Dated this 28th day of January, 2009.


s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE